**Marlena RAMALLO, Plaintiff,**

v.

**Janet RENO, et al., Defendants.**

**Civil Action No. 95–01851 (CRR).**

United States District Court,
District of Columbia.

June 27, 1996.

Robert S. Bennett, Richard L. Brusca, and Katharine S. Sexton, Skadden, Arps, Slate, Meagher & Flom, Washington, DC, for plaintiff.

Philemina McNeill Jones, Assistant Director, Michelle R. Slack and Laura M. Friedman, Attorneys, Office of Immigration Litigation; along with Gary Grindler, Deputy Assistant Attorney General, George J. Phillips, Counselor to the Assistant Attorney General, and Robert L. Bombaugh, Director, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-captioned case are the parties' Cross–Motions for Summary Judgment. Also before the Court are the defendants' Motion to Strike, Motion for Leave to File a Surreply, and Motion for Protective Order. Upon consideration of the pleadings, the entire record herein, the law applicable thereto, and for the reasons set forth below, the Court shall deny the parties' Motions for Summary Judgment. The Court also shall declare moot the defendants' Motion to Strike, grant the defendants' Motion for Leave to File a Surreply, and grant the defendants' Motion for Protective Order.

### BACKGROUND

Portions of the record herein have been filed under seal pursuant to a protective order signed by Chief Judge John Garrett Penn on September 27, 1995. The protective order was necessary to protect the identity and safety of witnesses, government representatives, and their respective family members. For the purposes of the instant Memorandum Opinion and Order, certain individuals have been referred to by title only in order to protect their anonymity and pursuant to Chief Judge Penn's protective order previously entered.

The following facts are undisputed. The plaintiff in the above-captioned case is Marlena Ramallo Kent Cooke, a native and citizen of Bolivia. She initially entered the United States in 1972 as a nonimmigrant visitor, and became a lawful permanent resident in 1978. *See In re Cooke,* No. A20 619 534 (Bd. Imm.App. Mar. 10, 1994), at 1.

On August 1, 1986, the plaintiff pled guilty to the offense of conspiracy to import less than one kilogram of cocaine in violation of 21 U.S.C. § 963 before the United States District Court for the Eastern District of Virginia, Alexandria Division. The plaintiff entered into a written plea agreement with the United States Attorney's Office on July 15, 1986, which provided that in return for her guilty plea and for her cooperation with federal law enforcement agencies and prosecutors concerning all violations of law about which she has any information, the United States agreed: that it would dismiss the remaining charges of the indictment; that no evidence she disclosed would be used against her during the course of her cooperation and that the Assistant United States Attorney ("AUSA") would bring the extent of the defendant's cooperation to the attention of the United States Probation Officer; and that it

would recommend that the Court suspend any period of incarceration and impose a period of probation at sentencing. The parties agree that the plaintiff complied with the agreement. The prosecutor recommended a suspended sentence and the plaintiff was sentenced to 18 months in prison, of which she served 5½ months.

On November 21, 1986, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause in the plaintiff's case, charging her with deportability under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11),[1] as a result of her criminal conviction. *Id.* The initial deportation hearing took place on February 25, 1987. Following two continuances, the plaintiff began to present evidence on April 6, 1988. The INS hearing was adjourned on April 6, 1988 and reconvened on May 10, 1988.

At the May 10, 1988 hearing, the following individuals discussed an agreement during a recess: an INS trial attorney, a Drug Enforcement Agent ("DEA agent"), the plaintiff's then-attorney, and the plaintiff. That agreement ("the cooperation agreement") is the core of the present dispute. The undisputed terms of the cooperation agreement were that: (1) the plaintiff agreed that she would cooperate with the DEA and the United States Attorney's Office in the investigation and prosecution of drug traffickers; (2) the plaintiff agreed to concede her deportability; (3) the plaintiff agreed to withdraw her application for a waiver of deportation pursuant to section 212(c) of the Act; and (4) the plaintiff agreed to waive her appeal of the Immigration Judge's decision finding her deportable. In exchange, the plaintiff alleges that the government, among other things, promised not to deport her.

On May 10, 1988, the INS attorney stated on the record during the plaintiff's administrative hearing that the plaintiff:

is going to withdraw the requested relief under 212(c) and is prepared to waive appeal on this case. The Service has agreed that Ms. Ramallo is not going to be taken into custody, that the carryover of the $3,000 bond is sufficient, and that there is an agreement of all parties that there will be an additional request made to the District Director which is beyond the Court's jurisdiction as far as the effect of the order of deportation.

On May 10, 1988, Immigration Judge Arrowsmith entered an order of deportation against the plaintiff. No appeal was taken from that order. *Id.*

The parties agree that the plaintiff complied with the following terms of the agreement: (1) she fully cooperated with the United States Attorney's Office and the DEA; (2) she withdrew her request for a waiver of deportation under section 212(c) of the Act; (3) she conceded her deportability; and (4) she waived her right to appeal the Immigration Judge's decision finding her deportable.

Subsequent to the May 10, 1988 hearing, Immigration Judge Arrowsmith contacted the INS attorney after seeing the plaintiff on television attending a Redskins' game and asked why the plaintiff had not been deported.

On May 15, 1990, there was a meeting among government representatives and the plaintiff's then-counsel to discuss avenues of administrative or legislative relief for the plaintiff in light of the outstanding order of deportation issued against her on May 10, 1988. One of the options discussed was a motion to reopen the deportation proceedings to give the plaintiff the opportunity to apply for a section 212(c) waiver of deportation. At that meeting, it was determined that the United States Attorney would file the motion to reopen. However, on February 10, 1992, the INS filed the motion to reopen on the plaintiff's behalf.

On February 20, 1992, Immigration Judge Arrowsmith granted the motion to reopen the plaintiff's deportation proceedings and, on March 17, 1992, gave the plaintiff's attorney one week to file the application for a

---

**1.** Section 241(a)(11) is now section 241(a)(2)(B) of the INA, 8 U.S.C. § 1251(a)(2)(B), and reads: Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is deportable.

waiver of deportation (Form I–191) under section 212(c) of the Act. The Form was not submitted, however, and on April 15, 1992, Immigration Judge Arrowsmith denied the plaintiff's request for relief under section 212(c). On May 1, 1992, the plaintiff filed a Notice of Appeal with the Board of Immigration Appeals of the order denying her relief.

On July 9, 1992, the INS moved to dismiss the plaintiff's appeal to the Board of Immigration Appeals based on the plaintiff's departures from the United States after the issuance of the order of deportation on May 10, 1988. Records reflect that the plaintiff departed and reentered the United States on numerous occasions between 1988 and 1992. On August 4, 1992, the INS notified the plaintiff through her attorney that if she left the United States and attempted to reenter during the pendency of immigration proceedings against her, she would be placed in exclusion proceedings.

On March 10, 1994, the Board of Immigration Appeals dismissed the plaintiff's case for want of jurisdiction, holding that her departures from the United States subsequent to her order of deportation divested the Board of jurisdiction to consider her motion to reopen. On April 8, 1994, the plaintiff filed a petition for review of the Board's decision with the United States Court of Appeals for the Fourth Circuit. *See Cooke v. Immigration and Naturalization Serv.*, No. 94–1456 (4th Cir. filed Apr. 8, 1994).

On September 28, 1995, the plaintiff filed the instant action in this Court, alleging violations of the plaintiff's Fifth Amendment rights, breach of contract, and promissory and equitable estoppel. The plaintiff seeks, *inter alia*, an order declaring that the May 1988 agreement is a legal and binding obligation of the government, and specific enforcement of the agreement by permanently enjoining the government from taking any further action to deport the plaintiff or refuse her reentry into the United States to the extent the plaintiff travels abroad, and by requiring the government to take any and all actions necessary to restore the plaintiff's status as a permanent resident of the United States.

After filing the instant action, the plaintiff filed a motion to hold the Fourth Circuit proceedings in abeyance pending the outcome of the present case. In a single-judge order, the Fourth Circuit opined:

It appearing to me that at one time, at least, in the recent past the government had an agreement with Marlena Kent Cooke that she could apply for a waiver to deportation, or like provision for her to live in the United States, if she were helpful to the government in the prosecution of certain criminal cases. And it further appearing that she may well have, and probably has, lived up to her part of the agreement, but that the government now opposes a decision on the merits of her application for a waiver of deportation or provision to live in the United States, for some reason which is not clear to me. The said Marlena Kent Cooke has sued the government in the District of Columbia, seeking to enforce the said agreement, in *Ramallo v. Reno, et al.* No. 1:95CV01851, and on that account seeks to have the proceedings in this case held in abeyance.

I am of [the] opinion Marlena Kent Cook [sic] should be permitted to pursue her said case in the district court in the District of Columbia.

*Cooke v. Immigration and Naturalization Serv.*, No. 94–1456 (4th Cir. Nov. 7, 1995) (Order) (Widener, Jr., J.).

In the present suit, the defendants moved for dismissal on the basis that this Court lacks subject matter jurisdiction over the plaintiff's Complaint. The defendants argued that the plaintiff's action "seeks to review the validity of a matter on which her final order of deportation is contingent and requests relief inconsistent with a final order of deportation, which is within the exclusive jurisdiction of the court of appeals" under section 106(a) of the INA. Furthermore, the defendants argued that the plaintiff's departure from the United States while under a final order of deportation "self-executed" the order of deportation and thereby removed this Court's jurisdiction over the order pursuant to section 106(c) of the INA. In a Memorandum Opinion and Order filed on January 29, 1996, this Court held that it had

jurisdiction over the claims alleged and the relief sought under 28 U.S.C. § 1331, notwithstanding the immigration context in which the claims arose. *Ramallo v. Reno,* 918 F.Supp. 11 (D.D.C.1996) (Richey, J.).

The parties have concluded their latest round of briefing. The plaintiff has moved for summary judgment on her claims that the government breached the agreement in violation of her Constitutional rights and that the government is promissorily and equitably estopped from deporting her. The defendants move for summary judgment as well. The defendants do not contest that a cooperation agreement was reached, but assert that it only promised the plaintiff a temporary stay of deportation. Further, the defendants assert that, regardless of the terms of the agreement, the representatives that dealt with the plaintiff did not have authority to bind the government. Alternatively, the defendants argue that the plaintiff modified the original agreement and that the plaintiff's own actions demonstrate that she has unclean hands and that she is therefore precluded from obtaining equitable relief.

## DISCUSSION

I. **THE AFFIDAVIT OF THE INS ATTORNEY IN THIS CASE RAISES A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE GOVERNMENT PROMISED NOT TO DEPORT THE PLAINTIFF IN EXCHANGE FOR HER COOPERATION; THEREFORE, THE COURT SHALL DENY THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND SHALL ORDER AN EVIDENTIARY HEARING PURSUANT TO FED. R.CIV.P. 43(e).**

A. *Summary Judgment Is Appropriate When There Is No Genuine Issue Of Material Fact And The Moving Party Is Entitled To Judgment As A Matter Of Law.*

Summary judgment is mandated under Federal Rule of Civil Procedure 56(c) when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (citation omitted).

An issue must be both genuine and material to preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. An issue is genuine if there is sufficient evidence to support a rational finding either way. In making this determination, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255, 106 S.Ct. at 2513. "Only disputes of facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

■ Because the Court would be the ultimate trier of fact in this case if it went to trial, "[c]onflict concerning the ultimate and decisive conclusion to be drawn from undisputed facts does not prevent rendition of a summary judgment." *Fox v. Johnson & Wimsatt, Inc.,* 127 F.2d 729, 737 (D.C.Cir. 1942); *see also Connors v. Incoal, Inc.,* 995 F.2d 245, 251 (D.C.Cir.1993) (summary judgment appropriate in non-jury setting when "factual" issue is one of characterization of lay facts). The Court may draw derivative inferences from undisputed subsidiary facts so long as those inferences do not depend on the evaluation of witness credibility. *Cook v. Babbitt,* 819 F.Supp. 1, 11 n. 11 (D.D.C.1993) (Lamberth, J.).

B. *The Crux Of The Present Dispute Is Whether The Government Promised The Plaintiff She Would Not Be Deported In Exchange For Her Cooperation.*

■ The plaintiff states that under the cooperation agreement, she agreed to con-

sent to the entry of an order of deportation and waive any appeal of that order; to voluntarily withdraw her request for a waiver of deportation; and to continue and expand her cooperation with DEA and the U.S. Attorney's Office by testifying in open court at trial and/or additional grand jury testimony and by acting as an undercover informant against various members of South American drug cartels. There is no dispute that the plaintiff has fulfilled these terms of the agreement. The plaintiff states that, in return, the government agreed to take no action to enforce the final order of deportation against her; not revoke or otherwise invalidate her green card; permit her to travel outside of, and return to, the United States in order to both collect information for DEA and for personal holidays or vacations; and have the deportation order withdrawn at a future date and to restore her status as a lawful permanent resident of the United States. Plaint's Mot. for Summ.Jud. at 7–8. While the defendants do not dispute that a cooperation agreement was made, they take issue with each of their obligations under the agreement, as detailed by the plaintiff. Most importantly, the defendants assert that the plaintiff was promised only a temporary stay of deportation in exchange for her cooperation and that she could not travel freely outside the United States.

The cooperation agreement at issue here was not reduced to writing; it was the result of discussions involving the plaintiff, her attorney, the INS attorney, the DEA Agent, and an AUSA. The crux of the bargain here was the government's alleged promise not to deport the plaintiff in exchange for her cooperation. The details of the plaintiff's green card, travel permission, and alien status are merely terms by which that agreement would be implemented. Regardless of these details, the Court shall conclude herein that the great weight of the evidence supports the plaintiff's assertion that the government promised not to deport her; however, the INS attorney's affidavit precludes summary judgment on this issue. Therefore, the Court shall hold an evidentiary hearing pursuant to Rule 43(e) of the Federal Rules of Civil Procedure in order to determine the limited issue whether the government prom-

ised not to deport Ramallo. If, after the hearing, the Court determines that the government in fact promised not to deport Ramallo, the Court shall enforce that promise.

C. *The Plaintiff's Contention That She Would Not Be Deported Is Supported By All The Evidence Except The Affidavit Of The INS Attorney.*

**1. The plaintiff's contention that she was promised she would not be deported is the most logical one under the circumstances and is supported by testimony from both the plaintiff's and the government's witnesses.**

At the outset, the Court cannot help but question the government's contention that the plaintiff volunteered to cooperate by testifying against vicious South American drug dealers in exchange for only a brief stay of deportation that would last until she finished testifying for the government. The consequence of such an agreement, of course, would be that the plaintiff ultimately would be deported into the waiting arms of the friends of those against whom she had just testified. Given the choice between that and being immediately deported without having first made dangerous enemies for herself, the Court can only infer that Ramallo would choose the latter course. Ramallo herself testified at her deposition in this case:

Q: [I]f the deal had been that you could testify for them and remain in the country during the time you were testifying but then after that you had to go back, would that have been the deal you would have accepted?

A: No, of course not. I'd be dead.

Q: Well, what do you mean?

A: Testify against all that people, you go back, they have you killed. I would rather not testify and just go home immediately.

Pl's Mot. for Summ.Jud. Exh. A.

Ramallo's then-attorney testified that he took "shorthand" notes at the May 1988 meeting, from which he immediately prepared a summary. The summary, submitted to the Court, details the terms of the cooperation agreement:

[The INS attorney] would drop charges (to deport) if Marlen would agree with all of [the DEA agent's] demands. (INS District Director would sit on Deportation Order) (*keep in drawer*). When INS was informed by DEA that Marlen cooperated as per *our Agreement*, Marlen's Deportation Order would be vacated or quashed.

Handwritten Notes, dated May 10, 1988, Pl's Mot. for Summ.Jud. Exh. G. When asked at a deposition about the agreement, Ramallo's then-attorney testified as follows:

Q: If someone were to make the claim ... that the only agreement reached on May 10, 1988, was that Ms. Ramallo could remain in the country for so long as she provided testimony to the government and would thereafter be subject to deportation, what would you respond?

A: I would have laughed in their face.

Pl's Mot. for Summ.Jud. Exh. C at 119.

The government participants to the agreement not only understood the extreme danger Ramallo would place herself in if she entered into a cooperation agreement, but also corroborate the plaintiff's version of the agreement. The DEA agent who worked with the plaintiff provided the following testimony regarding the danger involved and regarding the terms of the cooperation agreement:

Q: Now, was it your understanding that Ms. Ramallo would be able to remain here permanently in the United States in exchange for her cooperation, or was it your understanding that she could only stay here while she cooperated, and once her cooperation was through she could be deported:

\* \* \* \* \* \*

A: My understanding was that she was going to be permitted to stay in the United States. I don't believe an issue ever came up about it was only while she cooperated. It was my understanding that she was going to be permitted to stay here.

Q: And how do you have that understanding?

A: Based on what she was doing. Based on conversations that I had had with [the AUSA and the INS attorney] and Marlena

herself, unless I grossly misunderstood what everyone was saying. She would not have testified against the people that she was testifying against if she knew that she was going to go back to Bolivia. I mean, that's why I developed this understanding.

Q: Why do you say that, that she wouldn't have testified against these people?

A: Because that would have been illogical.

Pl's Mot. for Summ.Jud. Exh. B at 56–57. And, as the AUSA stated in an affidavit, "Ms. Ramallo was well aware of the risks inherent with her cooperation, and in my estimation it would have been illogical for her to cooperate against prominent members of South American drug gangs if she believed she would be deported back to that area of the world after her cooperation was completed." Pl's Mot. for Summ.Jud. Exh. D.

Thus, Ramallo's version of the agreement, which is the most logical, is also corroborated by those closely involved with the alleged agreement—Ramallo herself, her then-attorney, the AUSA, and the DEA agent.

2. **The government's subsequent conduct supports the plaintiff's contention that she was promised she would not be deported.**

Subsequent to the plaintiff's cooperation with the government, the government took, or failed to take, various actions that also support the plaintiff's assertion that the government had agreed not to deport her. First, the government took no steps to deport the plaintiff until August 1992, despite the fact that a Deportation Order issued in 1988. Also, on December 18, 1989, the Assistant District Director for Detention and Deportation in the INS Arlington District Office called the DEA agent and confirmed that the "DEA–AUSA made deals with [Ramallo]," and that because of her cooperation with those agencies, she has "no chance of survival in Bolivia." Handwritten Notes dated Dec. 18, 1989, Pl's Mot. for Summ.Jud. Exh. P.

Moreover, on May 15, 1990, the INS District Director held a meeting in his office with the AUSA, the INS attorney, another

INS official, and the plaintiff's counsel. A description of what occurred at that meeting has been provided to the Court by way of a memorandum from the District Director to the Commissioner, ERO. Pl. Mot. for Summ.Jud. Exh Q. The memorandum describes that the purpose of the May 15, 1990 meeting was "to discuss avenues of administrative relief for Ms. Ramallo with regards to her outstanding Order of Deportation issued on May 10, 1988." Plaint's Mot. for Summ. Jud. Exh. Q. The memorandum also states that "[Ms. Ramallo] has ... been permitted to remain in the United States due to an agreement made on May 10, 1988 with the former District Director, [the INS attorney, and the AUSA]." *Id.* During the meeting, several options were discussed for allowing Ramallo remain permanently in the United States, including a private bill, deferred action, stay of deportation, and a motion to reopen. It was decided that the "most feasible and equitable avenue to proceed would be the motion to reopen." *Id.* The motion to reopen was to be initiated by the U.S. Attorney as the representative for Ramallo. *Id.*

The following statement was made in the government's motion to reopen:

An agreement was apparently reached in this case between the trial attorney for the Service and the respondent, through her counsel. The agreement apparently required the respondent to withdraw her 212(c) application and accept an order of deportation. The respondent was then to help other federal agencies with drug prosecutions *in lieu of actually being physically deported from the United States.*

In the time that has passed since the original order of deportation was entered, the respondent has been extremely helpful to the government of the United States and has provided critical information that has resulted in the successful prosecution of many drug-related cases in the Eastern District of Virginia.... *This motion is based on the fact that the respondent has been a lawful permanent resident of the United States since April 4, 1978, that she has never had a 212(c) waiver hearing and she has continued to be of valuable service to the United States Government.*

Mot. to Reopen Deportation Proceedings, Pl's Mot. for Summ.Jud. Exh. T (emphasis added). Notably, the underlined text plainly means that, under the terms of the cooperation agreement, Ramallo was to provide assistance to the government instead of being deported and that the government considered her alien status to be that of a lawful permanent resident since 1978.

The government argues that the May 15, 1990 meeting evidences, if anything, a *modification* of the original contract wherein the government agreed only to file a motion to reopen. That position, however, is inconsistent with the memorandum by the INS District Director, which clearly indicates that the purpose of the meeting was to devise a plan to effectuate the government's promise that Ramallo not be deported. Similarly, with regard to the May 15, 1990 meeting, the AUSA in this case stated:

[T]he purpose of this meeting would be to attempt to select and agree on a plan which would permit Ms. Ramallo to stay in the United States permanently, in return for her already provided extensive assistance to the United States government in identifying and convicting several major drug criminals.... As I recall, everyone at the May 15th meeting, myself included, believed that the government should protect Ms. Ramallo by finding a way to allow her to stay in the Untied States on a permanent basis. If no such collective belief existed, it seems clear to me that the May 15, 1990 meeting would not have been handled the way it was, with all parties exchanging their views on how best to proceed with a plan to provide Ms. Ramallo with permanent residence in the United States. In addition, I do not recall anyone at the May 15, 1990 meeting voicing a contrary opinion.

Pl's Mot. for Summ.Jud. Exh. D. Thus, contrary to the government contentions now, it would appear that the May 15, 1990 meeting was not a modification of the original agreement terms but, rather, a meeting to discuss a method by which the government would attempt to fulfill its part of the bargain.

### 3. The affidavit of the INS attorney creates a genuine issue of material fact precluding summary judgment.

Although the great weight of the evidence supports Ramallo's contention that the government promised not to deport her, the defendants have submitted the affidavit of the INS attorney in opposition to the plaintiff's Motion for Summary Judgment. *See* Defs' Opp. Exh. 5. In that affidavit, the INS attorney avers, among other things, that the plaintiff was promised only that the DEA and the U.S. Attorney's Office would request a temporary stay of deportation from the INS District Director in return for her cooperation. This testimony raises a genuine issue of material fact as to whether the plaintiff was promised that she would not be deported in exchange for her cooperation and crucial testimony in several cases in the United States District Court for the Eastern District of Virginia.

### 4. The Court shall hold an evidentiary hearing pursuant to Rule 43(e) to resolve the issue whether the plaintiff was promised that she would not be deported.

Because of the INS attorney's affidavit, the Court shall hold an evidentiary hearing pursuant to Rule 43(e) of the Federal Rules of Civil Procedure to resolve the issue whether the plaintiff was promised that she would not be deported. The Court shall issue an order of even date herewith setting forth a schedule for the prompt resolution of that issue.

### D. *The Government Would Be Bound By The Alleged Promise Not To Deport The Plaintiff.*

■ The defendants assert that, even assuming the terms of the agreement are exactly as the plaintiff claims they are, that is, that the plaintiff was promised she would not be deported, the government would not be bound by such an agreement. The Court disagrees.

■ The Court begins its analysis with a well-settled proposition that is founded in the fundamental fairness doctrine of the Fifth Amendment: when the government makes a promise that induces someone to relinquish constitutional or other substantial rights, that promise must be fulfilled. *See, e.g., Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *United States v. Cooper*, 70 F.3d 563, 567 (10th Cir.1995) ("When [plea] agreements are made with full knowledge of the facts at hand, those agreements should be ... 'fulfilled to maintain the integrity of the plea,' not to mention the integrity of the government."); *United States v. Martin*, 25 F.3d 211 (4th Cir.1994) (defendant entitled to specific performance when government breached oral modification to plea agreement); *Plaster v. United States*, 720 F.2d 340, 350, 354 (4th Cir.1983) (fundamental fairness of Fifth Amendment required enforcement of government's promise of immunity even when written agreement lost in mail and defendant was never call upon to perform his part of the bargain); *Cooper v. United States*, 594 F.2d 12 (4th Cir.1979) ("[A] constitutional right to enforcement of plea proposals may arise before any technical 'contract' has been formed, and on the basis alone of expectations reasonably formed in reliance upon the honor of the government in making and abiding by its proposals."); *Petition of Geisser*, 554 F.2d 698 (5th Cir.1977) (specific performance ordered despite valid international treaty requiring the United States to extradite petitioner that conflicted with promise in plea bargain to use best efforts to prevent extradition); *United States v. Castelbuono*, 643 F.Supp. 965, 971 (E.D.N.Y.1986) (oral agreement could have been fully enforced had defendant sought to do so); *Tully v. Scheu*, 487 F.Supp. 404, 411–12 (D.N.J.1980) (when defendant irretrievably changes position in reliance on agreement, U.S. Constitution mandates specific performance of government's agreement; retraction of plea meaningless when defendant's cooperation with government made him a target for vengeance of former criminal associates), *rev'd on other grounds*, 637 F.2d 917 (3d Cir.1980). At stake in such circumstances are the liberty of the defen-

dant, the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice. *Cooper,* 594 F.2d at 20 (quoting *United States v. Carter,* 454 F.2d 426, 428 (4th Cir. 1972)).

The government argues that the doctrine embodied in the aforementioned cases does not apply to the cooperation agreement at issue because the agreement is not a plea agreement and, therefore, does not involve "the constitutional right to a jury trial or to challenge defects in a criminal proceeding." Def.'s Mot. for Summ.Jud. at 8. Nevertheless, what the plaintiff surrendered here by cooperating with the government was just as important as the right, for example, to a jury trial in a criminal case. Ramallo severely compromised her own safety by cooperating with the government. The AUSA involved testified as to the extent and value of the plaintiff's cooperation and stated that she would be in danger if she were deported to Bolivia. Plaint's Mot. for Summ.Jud., Exhs. B, H. Furthermore, the DEA agent testified that after Ramallo cooperated in 1988, 1989, and 1990, she was in even greater danger. *Id.* Lest it be overlooked, the failure to honor the agreement alleged here not only could result in a loss of liberty, but also very well could result in death.

Furthermore, the plaintiff undisputedly relinquished her right to a full hearing before the Immigration Judge as a result of the cooperation agreement. *Cf. McLeod v. Peterson,* 283 F.2d 180, 183–84 (3d Cir.1960) ("In [a case involving] the status of an alien, we are dealing with an especially critical and fundamental individual right. . . . Meticulous care must be exercised lest the procedure by which [an alien is deported] not meet the essential standards of fairness."); *Tejeda v. INS,* 346 F.2d 389, 392–95 (9th Cir.1965) (same) (concurring opinion); *Sun Il Yoo v. INS,* 534 F.2d 1325, 1329 (9th Cir.1976) (Deportation is drastic measure that may result in the "loss of all that makes life worth living."); *see also United States v. Board of Educ.,* 567 F.Supp. 272, 283 (N.D.Ill.) (specific performance of settlement agreement awarded when party had waived right to litigate civil action in reliance on U.S. government agreement).

■ This Court concludes that the due process concerns involved with a plea agreement are just as prevalent with respect to the agreement at issue here and rejects outright the defendants' argument to the contrary. The notion of fundamental fairness at issue with respect to a plea agreement deserves no less respect when the agreement at issue is a cooperation agreement. *Accord Thomas v. INS,* 35 F.3d 1332 (9th Cir.1994) (cooperation agreements like plea agreements are enforceable).

■ The defendants also argue that the INS Trial attorney, the AUSA, and the DEA agent, who allegedly promised the plaintiff that she could remain in the country, nevertheless had no authority to bind the government. Again, the Court disagrees.

In *Thomas v. INS,* 35 F.3d 1332 (9th Cir. 1994), the Ninth Circuit addressed the question whether a United States Attorney's promise to an alien in a cooperation agreement bound the INS. Answering that question in the affirmative, the Court noted, first, that the promise would be binding only if the United States Attorney had either an express grant of authority to make such a promise, or his authority for making the promise was incidental to some other express grant of authority. *See Thomas,* 35 F.3d at 1338. Finding neither an express grant nor an express limitation of authority to bind the INS, the Court proceeded to hold that the United States Attorney's power to "prosecute for all offenses against the United States," 28 U.S.C. § 547(1), implies such authority under ordinary principles of agency law. *Id.* at 1339. Similarly, the Eighth Circuit has adopted the reasoning of *Thomas,* and upheld the authority of the United States Attorney to bind the INS to a plea agreement. *Margalli–Olvera v. INS,* 43 F.3d 345 (8th Cir.1994). *See also Henry v. INS,* 8 F.3d 426 (7th Cir.1993) (a United States Attorney for one district could bind a United States Attorney in another district). The Eleventh Circuit, on the other hand, has held that a United States Attorney, being neither an INS officer nor employee, did not have the authority to promise that an alien

would not be deported. *San Pedro v. United States,* 79 F.3d 1065 (11th Cir.1996).

While the Court is persuaded by the reasoning of the *Thomas* and *Margalli–Olvera* courts and not by that of the *San Pedro* court, it need not now definitively choose between this division of authority because the issue of the government agent's authority to bind the INS here is much simpler. In this case, the promise not to deport allegedly was made, not only by an AUSA, but by an INS attorney, whose job is to represent the INS, *inter alia,* in matters of deportation proceedings. Absent an express limitation to such authority, it is clear under principles of agency law that an attorney for the INS, engaged in representing the INS in deportation proceedings against the plaintiff, had the authority to bind the INS in this cooperation agreement. *Cf. Cooper v. United States,* 594 F.2d 12, 20 (4th Cir.1979) ("Once plea discussions are underway, it clearly lies with the agencies of government to keep the left hand informed of the right's doing [and] to withhold or limit the actual, and circumscribe the apparent, authority of subordinates if this be considered necessary.").

■ The defendants next argue that the promise not to deport the plaintiff would not be enforceable because there allegedly is no provision of law under which the defendants could effectuate such a promise. In response, the plaintiff has described several means by which the defendants could have complied with their agreement not to deport the plaintiff. For example, the plaintiff points out that the Attorney General may, in her discretion, reverse a Board of Immigration Appeals' decision. *See* 8 C.F.R. § 3.1(h). In addition, under the Witness Protection Program, 18 U.S.C. §§ 3521, the Attorney General may take whatever measures are necessary to protect the life of a grand jury witness. Also, the government could have granted a suspension of deportation. 8 U.S.C. § 1254(a)(2).

The government has responded by asserting, essentially, that none of these avenues of relief are now available to the plaintiff because Ramallo withdrew her section 212(c) request and waived her rights to appeal. This point misses the mark, however. The plaintiff intends not to propose methods by which the government may now comply with its agreement, but to explain that at the time the government entered into the agreement, there were provisions of law enabling the government to effectuate its promise. The government does not, and cannot, dispute that. This Court is not persuaded by the government's claim that it cannot live up to its promise now because the plaintiff took steps the government directed her to take in order to effectuate its promise.

E. *The Government Would Not Be Relieved Of Its Promise To The Plaintiff Simply Because The Plaintiff May Have Traveled Outside The Country Without First Obtaining Authorization From The DEA agent.*

■ There is some conflicting evidence in the record concerning the specific conditions under which the plaintiff would be permitted to travel outside the country. The plaintiff alleges that, pursuant to the agreement, she would be permitted to travel outside of, and return to, the United States in order to collect information for the DEA and for personal holidays or vacations, as long as she obtained permission to do so from the DEA agent. The government claims that the plaintiff is barred from recovery because she left the country on several occasions without receiving authorization from the DEA agent. The Court concludes that, even if Ramallo took several trips without first obtaining authorization, that would not preclude her from obtaining relief on summary judgment because she substantially complied with the cooperation agreement and because the government would be estopped from deporting her.

1. **The government could not avoid its contractual obligations because the plaintiff substantially complied with the cooperation agreement and any deviation was minor and of no legal effect.**

■ Generally, a party to a bilateral contract may demand substantial compliance with the terms of the contract. *Clayman v. Goodman Props., Inc.,* 518 F.2d 1026, 1034–

35 (D.C.Cir.1973). "In most cases ... a promisor's tender in good faith of a performance fully in compliance with the contract save for minor and unimportant deviations avoids a breach enabling the promisee to escape his obligations thereunder." *Id.* at 1035; *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007 (D.C.Cir.1985) (substantial performance exists when a contracting party has failed to render full performance but the defects are, all considered, minor; the substantial performance doctrine may apply to any contract).

The government cannot escape its obligation to Ramallo under the cooperation agreement because Ramallo substantially complied with its terms. It is undisputed that Ramallo provided valuable information to the government and was responsible for securing the convictions of numerous drug dealers. Thus, the government received and enjoyed all the benefits of Ramallo's cooperation. The terms by which she could travel out of the country on occasion, whatever they were, were a minor part of the cooperation agreement.

### 2. The government is estopped from deporting the plaintiff.

██ In addition to the foregoing, the Court agrees with the plaintiff that estoppel would apply against the government here. *See National Juvenile Law Center, Inc. v. Regnery*, 564 F.Supp. 1320, 1327–28 (D.D.C. 1983) (promissory estoppel applies against the government when the plaintiff reasonably relies on promise, estoppel is necessary to overcome an injustice, and will not cause undue damage to the public interest), *rev'd*, 738 F.2d 455 (D.C.Cir.1984) (facts of case did not meet standard set forth by trial court with respect to reasonable reliance); *Morris v. Runyon*, 870 F.Supp. 362 (D.D.C.1994). *See also Moser v. United States*, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951) (when government led immigrant to believe false assertion that his application for U.S. citizenship would not be adversely affected by seeking an exemption from military service, immigrant exempted from that requirement); *United States v. Chargualaf*, 76 F.3d 389 (9th Cir.1996) (detrimental reliance on oral plea agreement could estop government from

withdrawing agreement) (table); *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir.1992), *cert. denied*, 507 U.S. 997, 113 S.Ct. 1613, 123 L.Ed.2d 174 (1993) (detrimental reliance on government's promise of terms in plea bargaining could lead to specific enforcement); *Sun Il Yoo v. INS*, 534 F.2d 1325 (9th Cir.1976) (conduct of INS estopped government from denying petitioner benefit of precertification); *United States v. Ruby Co.*, 588 F.2d 697 (9th Cir.1978) (equitable estoppel lies against government when it has committed affirmative misconduct), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Santiago v. INS*, 526 F.2d 488 (9th Cir.1975) (same), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976).

Here, Ramallo's reliance on the government's promise was reasonable, given that both she and the government understood the danger to her life involved with her cooperation with prosecutors and openly testifying against members of South American drug gangs. Estoppel is necessary to overcome the grave injustice that would befall Ramallo if she is deported. Finally, the public interest is furthered in ensuring that constitutional rights are upheld, that the government does not induce individuals to forfeit substantial rights in exchange for meaningless promises, and that persons in the American system of justice are encouraged to cooperate with the government.

As for the government's assertion that it has not engaged in affirmative misconduct, if the Court finds that Ramallo was promised that she would not be deported, the government's subsequent moves to deport her, especially given the nature and extent of her cooperation, would constitute such misconduct. *Cf. Sun Il Yoo*, 534 F.2d at 1328 (INS's unexplained delay in considering application constituted affirmative misconduct). And, as for the government's assertion of an unclean hands defense based on Ramallo's travel outside the country, there is not a sufficient basis in the record to conclude that Ramallo acted in bad faith when she did so. *See Rubin v. Estate of Warner*, 881 F.Supp. 23, 26 (D.D.C.1995) ("unclean hands" defense requires that plaintiff acted in bad faith). The DEA agent testified that "[Ramallo] told

me that she would travel, and I didn't object to it." Pl's Mot. for Summ.Jud. Exh. B. The plaintiff herself testified she believed she had a right to do so. The Court has considered all the evidence adduced by the parties relating to Ramallo's trips. On the undisputed facts, the Court may, and does, infer that Ramallo did not act in bad faith. *See Connors v. Incoal, Inc.*, 995 F.2d 245, 251 (D.C.Cir.1993) (when the only factual issue is one of characterization of undisputed lay facts and the opponent of summary judgment claims no right to jury trial, the dispute is properly resolved on summary judgment).

## II. THE COURT SHALL DECLARE MOOT THE DEFENDANT'S MOTION TO STRIKE.

The defendant moves to strike the plaintiff's "Statement of Material Facts as to which the Plaintiff Contends there is no Genuine Issue." The defendants complain that the pleading contravenes the Court's Order that the parties meet and confer and file a joint statement of uncontested material facts, which they did, and that the pleading does not comply with Local Rule 108(h). The Court relied only on the parties' joint submission in determining the issues decided herein. The instant Memorandum Opinion and Order render moot the defendants' instant motion to strike.

## III. THE COURT SHALL GRANT THE DEFENDANT'S MOTION FOR LEAVE TO FILE A SURREPLY.

The defendants have moved for leave to file a surreply. The plaintiff opposes.

The Court shall grant the defendant's motion for leave to file a surreply because the surreply responds to the plaintiff's request in her reply brief to strike six of the affidavits filed in opposition to her motion for summary judgment. Included in those affidavits is that of the INS attorney, which was filed late. The plaintiff's request with respect to the INS attorney's affidavit is denied because this affidavit was delayed due to a family medical emergency. As for the other affidavits, the Court need not address technical deficiencies in light of its ruling and denies the plaintiff's request.

## IV. THE COURT SHALL GRANT THE DEFENDANT'S MOTION FOR A PROTECTIVE ORDER.

The defendants have requested a protective order concerning any information relating to the INS attorney received by the plaintiff, provided by the government to the plaintiff, or provided in proceedings before this Court. The defendants urge that such an order is necessary for the safety of the INS attorney and that attorney's family members. Plaintiff's counsel has concurred in the motion. Accordingly, the Court shall grant the defendant's motion.

## CONCLUSION

For the above reasons, the Court shall deny the parties' Cross–Motions for Summary Judgment. The only evidence that contravenes the plaintiff's contention as to the government's agreement not to deport her consists of an affidavit by the INS attorney involved in these proceedings. However, this affidavit is directly contravened not only by the plaintiff, but by the INS District Director, the AUSA, the DEA agent, and the United States District Court for the Eastern District of Virginia.

In addition, common sense supports the conclusion that the plaintiff, an adult of some sophistication, would not endanger her very life by cooperating with the government in a multitude of cases involving her native Latin American country and perhaps others when it is axiomatic that Latin America is the home of deadly drug distributing cartels. Under these circumstances, for the plaintiff to have undertaken to cooperate and assist in the conviction of members of these cartels and then agreed to go back to her native country is too preposterous to even contemplate.

Notwithstanding the foregoing, and what appears throughout this Memorandum Opinion, the Court has determined to hold a limited hearing so that it can make a judgment as to the credibility of the INS attorney and so that it can determine whether that witness can successfully controvert the con-

clusions of the Court based on the record herein. This hearing will take place pursuant to Federal Rule of Civil Procedure 43(e). Again, the Court believes that an agreement that is entitled to respect under the Due Process Clause of the Constitution has been established in this record. Nevertheless, it will offer the government an opportunity to tender this one witness to determine whether, as a matter of fact, the witness can overcome the conclusions herein reached. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

In order to protect the safety of the plaintiff and her family, and that of certain government agents involved, portions of the record in the above-captioned case have been placed under seal, specifically, the names of persons against whom the plaintiff testified when cooperating with the government and the identity of the agents with whom she cooperated. The foregoing Memorandum Opinion and the Order issued of even date herewith contain have complied with these concerns to the extent possible. However, this lawsuit is a matter of public concern, and the public is at least entitled to know the basis of the Court's reasoning. Therefore, the Court's Memorandum Opinion and Order shall be made a matter of public record.